[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON CERTAIN DEFENDANTS' MOTIONFOR PARTIAL SUMMARY JUDGMENT JANUARY 31, 1994
The defendants The Home Insurance Company, North River Insurance Company and Employers Insurance of Wausau, "Excess Carriers" make this motion for partial summary judgment. These defendants are joined by other "excess carriers" in moving for summary judgment on the bases asserted by the above-named defendants.
The defendant excess carriers take certain positions which are allied to, if not identical to positions taken by defendants in other motions for summary judgment, which other motions are determined by the Court this date. Reference may be had to those memoranda for further articulation of this decision.
These defendants claim, in Argument B of their memorandum, that "Reichhold's Failure to Give Timely Notice Precludes Coverage Under Defendants' Policies" with respect to the Rockport site. The defendants contend that the "Consent Order" entered into by the plaintiff with the State of New Jersey Department of Environmental Protection of June 21, 1985 informed the plaintiff of a claim which would possibly implicate the excess policies as early as June 21, 1985. The plaintiff gave first notice to the excess carriers of a claim by its notice to the excess carriers on September 28, 1988.
A copy of the "consent order" is submitted with this motion, as "exhibit 8." The "consent order" requires the plaintiff to engage in a sampling process to accomplish "complete delineation of environmental on-site and any off-site environmental contamination resulting from discharges CT Page 6410 of hazardous wastes or substances on or from the Industrial Establishment."
There is little doubt but that at this time of the consent order it was known that there was or had been leakage from a tank located on the site. However there is no evidence to indicate that either the plaintiff or the New Jersey DEP had any information, evidence, or reason to believe that any damage or pollution or contamination had occurred to any property of anyone else, including the public. Had the DEP had reason to believe that contamination had taken place off-site the wording of that order would not have included the vague word "any." Either no such word, or the word "all" would have reflected a rational belief as to such a happening. There is no evidence submitted herewith to support the defendants' contention that the plaintiff knew or should have known of the reasonable prospect or possibility of damage to property of others.
It is not sufficient to assume that because of the adage of life that anything is possible, or the precautionary words of the consent order to the effect that if anything is ever discovered as to off-site contamination it must be cleaned up, that this is synonymous with knowledge of the reasonable possibility of any off-site contamination. There is no evidence to indicate actual or imputed knowledge of off-site pollution, or any assertions of a claim or even an asserted belief to that effect by anyone. There is no evidence that the plaintiff had knowledge of or any reason to believe that there was a possibility of off-site contamination on June 30, 1985.
The plaintiff claims, through the affidavit of William Markly, its Risk Manager, that the plaintiff did not know of any indication of property damage to third parties until May 1988. There was a four-month hiatus between this date and the reporting date of September 28, 1988. There is a question of fact as to when the insured knew or reasonably should have known about the possibility of a claim of off-site contaminants.
Assuming, arguendo, that this question of fact may be resolved in favor of the plaintiffs, concerning its contention of first knowledge of possible off-site CT Page 6411 contamination coming to its attention three years after the incident. The further question is whether, under New York law, the delay of four months thereafter in reporting the incident, resulting in the insurers receiving notice of the incident forty months after the incident, rather than thirty-six months after the incident, would preclude coverage under New York law.
The reported decisions do not deal with these circumstances. It is the opinion of this Court that under the factual circumstances herein any benefit which could conceivably inure to the benefit of the insurers by the necessity of reporting either "immediately" or "as soon as practicable" is simply not appropriate. Though New York law may appear harsh, as compared to the law of Connecticut or New Jersey, as concerns this subject, yet this Court cannot conclude that the courts of New York would apply its law in a fashion which would have no avowed purpose other than to be irrationally punitive. The necessity of the insured to give immediate or as soon as possible notice to the insurer, under ordinary circumstances, based upon what may be understood to be a conclusive presumption of prejudice, as a matter of law, loses all meaning when the insured cannot itself know of the reasonable possibility of a claim. This Court further notes that the Supreme Court of this state, in dealing with the question of reasonable
doubt has time and again affirmed the proposition that reasonable doubt means doubt "for which a reason can be given." That reason must arise from evidence, and not from guess, speculation or conjecture. Hence the question of fact herein is whether the plaintiff had reason to believe that there was a possibility of off-site pollution.
The Court further notes that the excess policies contain a provision that if the happening did not appear to involve the excess policy, but which do so appear to involve the policy at a later date, late notice shall not prejudice such claims.
The motion for summary judgment on the basis of late notice cannot be sustained.
Argument C. To the extent that the Rockport damages do not exceed the limits of the primary insurance Reichhold has no claim against the excess defendants. CT Page 6412
The defendants assert three contentions concerning damages in this claim for summary judgment. One contention is to the effect that the plaintiff's evidence will not demonstrate that its claim exceeds the limits of the primary coverage. Another is that the level of damages will not reach the level provided by the first level excess policies. Further, that the level of damages do not reach the "High Level" excess policies.
This Court is not able to determine in this motion what amount of damages, if any, are able to be proven by the plaintiff. The Court cannot determine when the alleged damages recurred. The Court cannot determine the relationship between the policies, so as to necessarily accept the contentions of the defendants.
The amount of damages is peculiarly the province of the trial of the case. Testimony given at depositions, or information provided through disclosure, do not constitutejudicial admissions, so as to be absolutely binding upon the party. Although differences in evidence at trial versus information produced by discovery are at the very least embarrassing, and at times devastating as to credibility, those factors do not elevate discovery information to the level of judicial admissions. New information, changed circumstances, mathematical errors and the like are common in litigation. The matter of damages is the particular function of the trial procedure.
Further, this Court on July 1, 1993 Judge Freed, entered in the order that this case be tried under the Bellweather format, allowing the parties to choose the location for this first trial. The purpose thereof was to resolve resolve certain questions, or at least to give guidance to all of the parties as concerns successive sites. All of the parties are now and remain parties to this action. They are not only parties to the Bellweather site. They are parties to this action. The Court is not prepared to excuse parties from this trial, to be met with a later claim that, as they were not participants in the Bellweather hearing, they are not informed of, let alone bound by, the proceedings of the Bellweather trial. This Court, Judge Koletsky, in Carrier Corporation v. TravelersIndemnity Company, et al., 4 Conn. L. Rptr 191 (1991) in an CT Page 6413 analogous situation, properly refused to excuse parties under similar circumstances. The parties and the courts must function within a framework which has a reasonable prospect of rationality adjudicating the disputes of the parties. This cannot be accomplished by a format of perpetual and never ending litigation.
The motion for summary judgment on the basis of the argument "C" cannot be sustained.
The defendants assert, in reason "D" that to the extent the High Point damages do not exceed the limits of the primary insurance Reichhold has no claim against the excess defendant.
This contention is similar to the contention advanced in reason "C". The decision applicable to decision "C" is equally applicable to the High Point Landfill site. The motion for summary judgment on the basis of this argument "D" cannot be sustained.
The defendants assert, in reason "E" that the pollution exclusion precludes coverage because of Reichhold's long-term intentional discharge of contaminants at the High Point landfill.
The defendants cite, in support of its contention, the case of Borg-Warner Corp. v. Ins. Co. of North America, 577 N.Y.S.2d 39. Those cases deal with circumstances where it appears clear from the factual context that the substances were deposited in such a fashion that their escape into the environment was inevitable, and that failure to appreciate the inevitable consequences thereof, or failure to know of the contaminating propensities of the substances would not prevent the application of the pollution exclusion.
As is articulated in memoranda filed this date as concerns similar motions, there is nothing in the record to determine whether these substances, or any of them, were delivered to the site in containers of such integrity and durability as to keep the substances or any of them self contained and impervious to the elements or to the normal physical activity expected to occur at the landfill site. The information submitted to the court does not conclusively determine that question. CT Page 6414
The insured has the right to a determination as to whether the discharge of the substance, or some of it, was "sudden and accidental." To conclude, as a matter of law, that the mere delivery of substances to a disposal site, regardless of the physical integrity of the containment vessel as delivered to as is utilized at the site, or the physical integrity of the site for that matter, and without regard to the circumstances which caused a later escape into the environment, would cause the "sudden and accidental" exception to the pollution exclusion clause to be absolutely meaningless.
This Court cannot determine, on the basis of the evidence subnmitted [submitted] herewith, whether all of some of the alleged discharge of contaminants were or were not "sudden and accidental." That question of fact must be determined at trial. This reason, E, cannot support the motion for summary judgment.
For the reasons set forth herein the motion for summary judgment of the excess carriers, relating to the motion of January 31, 1994, is denied.
L. Paul Sullivan, J.